In re PROCEEDINGS TO ENFORCE
GRAND JURY SUBPOENAS.

Misc. No. 76–417.

United States District Court,
E. D. Pennsylvania.

April 14, 1977.

David W. Marston, Michael B. L. Hepps, Douglas B. Richardson, Philadelphia, Pa., for petitioner.

Joel Harvey Slomsky, David A. Garfunkel, A. Charles Peruto, Philadelphia, Pa., for respondent.

### OPINION

JOSEPH S. LORD, III, Chief Judge.

On November 4, 1976, Anna Jane Feeney, Albert E. Pace, Henry Pace, Jr., Maryann Pace, Joseph Trout, Dolores Trout and Patrick Joseph Dixon appeared before the grand jury pursuant to subpoena, but refused to comply with the grand jury demand for handwriting exemplars, fingerprints, photographs and voice exemplars ("physical characteristics"). We must decide whether a defendant in a civil contempt action[1] stemming from the defendant's refusal to divulge physical characteristics may defend by asserting that the grand jury subpoena was the primary product of an illegal wiretap. If a witness may so defend, we must determine the appropriate scope of inquiry where the bases for the witness' defense are, as here, that a court-ordered wiretap is insufficient on its face and that the interception was not made in conformity with the wiretap authorization.[2]

1. The government filed a motion to enforce the grand jury subpoenas accompanied by an affidavit stating that the evidence sought is essential and necessary to the grand jury investigation of possible violations of 18 U.S.C. § 1961 et seq. and § 1343. In re Grand Jury Proceedings (Schofield), 507 F.2d 963 (3d Cir.), cert. denied, 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). The witnesses appeared and contested the motion alleging an illegal wiretap. At the suggestion of the witnesses and with the agreement of the government, the enforcement proceeding was consolidated with a civil contempt action to enable the witnesses to make their defense.

2. The witnesses also have claimed that the subpoenas were products of the unlawful interception of communications. The government, pursuant to 18 U.S.C. § 3504, has denied the occurrence of an unlawful act. United States v. D'Andrea, 495 F.2d 1170 (3d Cir.), cert. denied,

### I. PHYSICAL CHARACTERISTICS AS "EVIDENCE DERIVED"

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., provides "a comprehensive scheme for the regulation of wiretapping and electronic surveillance. * * * Title III authorizes the interception of private wire and oral communications, but only when law enforcement officials are investigating specified serious crimes and receive prior judicial approval, an approval that may not be given except upon compliance with stringent conditions." Gelbard v. United States, 408 U.S. 41, 46, 92 S.Ct. 2357, 2360, 33 L.Ed.2d 179 (1972).

When there is an interception in violation of the statutory scheme, section 2515[3] provides that the contents of any such communication and any "evidence derived therefrom" is not to be received in evidence before, inter alia, a grand jury. The government concedes that testimonial evidence can be "evidence derived," triggering the section 2515 defense. Cf. Gelbard v. United States, supra. The issue then is whether physical characteristics also can be "evidence derived" within the meaning of section 2515.

The purpose of the section 2515 exclusionary rule, like the exclusionary rule of the fourth amendment,[4] is to deter priva-

419 U.S. 855, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974).

3. Section 2515 provides: "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."

4. The section 2515 exclusionary rule provides a protection independent of the fourth amendment exclusionary rule. See United States v. Calandra, 414 U.S. 338, 355 n. 11, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); Gelbard v. United States, supra, 408 U.S. at 45 n. 5, 70, 92 S.Ct. 2357.

cy-invading misconduct by denying officials the fruits of their misconduct. In determining those fruits, the fourth amendment does not distinguish testimonial evidence from physical characteristics or any other evidence. *See, e. g., Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (fingerprints suppressed as fruit of illegal arrest); *United States v. Cassell,* 452 F.2d 533, 541 (7th Cir. 1971) (handwriting exemplar suppressed as fruit of *Miranda* violation); *Bradford v. United States,* 413 F.2d 467, 471 (5th Cir. 1969) (handwriting exemplars should be suppressed if fruit of *Miranda* violation). The government misconceives the privacy interest at stake when it argues that grand jury witnesses have no expectation of privacy in their physical characteristics and that, therefore, Congress could not have intended section 2515 to protect a non-existent interest in privacy. *See, e. g., United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). Section 2515 serves to protect the privacy of communications,[5] *Gelbard v. United States, supra,* 408 U.S. at 51, 92 S.Ct. 2357, not necessarily the privacy interest in any evidence derived therefrom. The appropriate inquiry is whether the evidence sought is the fruit of an illegal wiretap; the type of evidence involved is irrelevant.

In *In re Grand Jury Witness Whitnack,* 544 F.2d 1245 (9th Cir. 1976), a witness refused to furnish handwriting and fingerprint samples citing her belief that the request was based upon an illegal wiretap. The court held that the government was not required to affirm or deny the existence of an illegal wiretap as mandated by 18 U.S.C. § 3504(a) because the grand jury's interest in the physical characteristics of the witness was not the primary product of any wiretap, there being legitimate independent grounds for that interest. However, the court intimated that handwriting and fingerprint samples were less protected under Title III than testimonial evidence.

Judge Kennedy's concurrence took issue with that:

"I cannot agree, however, with the suggestion that simply because the grand jury demanded nontestimonial evidence, the Government need not respond as required by section 3504 to allegations of illegal wiretapping. Such nontestimonial evidence, as well as testimonial evidence, may be 'evidence derived' from illegally intercepted communications within the meaning of 18 U.S.C. § 2515. In enacting the wiretap legislation comprising sections 2515 and 3504, Congress intended to provide safeguards against violations of the privacy interests guaranteed by the fourth amendment. *See Gelbard v. United States,* 408 U.S. [41] at 50–53, 92 S.Ct. 2357, 33 L.Ed.2d 179. The manifest purpose of section 3504 is to provide procedures that insure that the Government fully complies with the mandate of section 2515, which proscribes the use in any official proceeding of evidence that is the product of illegally intercepted communications. While the testimonial nature of the evidence sought may be critical in analyzing cases involving the fifth amendment privilege against self-incrimination, the nature of the evidence is immaterial in a case like this, where the primary consideration is whether the demands of the grand jury are tainted on fourth amendment grounds." *Id. at 1247*

■ We agree with Judge Kennedy and hold that the physical characteristics requested of these witnesses can be "evidence derived" within the meaning of section 2515 and that the witnesses may raise this statutory defense to a civil contempt action.

## II. SCOPE OF REVIEW

The physical characteristics sought appear to be the fruits of an electronic surveillance authorized by Judge Weiner of this District. We must decide whether and to what extent defendants will be permitted to challenge the validity of electronic

---

**5.** Section 2515 also ensures "that the courts do not become partners to illegal conduct." *Gel-* *bard v. United States, supra,* 408 U.S. at 51, 92 S.Ct. at 2363.

surveillance which the government maintains is pursuant to a court order.

In *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), the Supreme Court held that a grand jury witness may refuse to give testimony derived from unauthorized electronic surveillance and then invoke the section 2515 defense in an action for contempt pursuant to 28 U.S.C. § 1826(a) based on the failure to obey a court order to answer the questions. The opinion of the Court, representing the views of four of its members, emphasized that "to order a grand jury witness, on pain of imprisonment, to disclose evidence that § 2515 bars in unequivocal terms is both to thwart the congressional objective of protecting individual privacy by excluding such evidence and to entangle the courts in the illegal acts of Government agents." *Id.* at 51, 92 S.Ct. at 2363. However, the Court left open the question whether witnesses may refuse to answer questions if the interceptions were pursuant to court order. *Id.* at 61 n. 22, 92 S.Ct. 2357.

Justice White provided the majority in *Gelbard* with its fifth and decisive vote. He stated in his concurring opinion:

"I agree with the Court, however, that at least where the United States has intercepted communications without a warrant in circumstances where court approval was required, it is appropriate in construing and applying 28 USC § 1826 not to require the grand jury witness to answer and hence further the plain policy of the wiretap statute. This unquestionably works a change in the law with respect to the rights of grand jury witnesses, but it is a change rooted in a complex statute, the meaning of which is not immediately obvious as the opinions filed today so tellingly demonstrate.

"Where the Government produces a court order for the interception, however, and the witness nevertheless demands a full-blown suppression hearing to determine the legality of the order, there may be room for striking a different accommodation between the due functioning of the grand jury system and the federal wire-tap statute. Suppression hearings in these circumstances would result in protracted interruption of grand jury proceedings. At the same time, prosecutors and other officers who have been granted and relied on a court order for the interception would be subject to no liability under the statute, whether the order is valid or not; and, in any event, the deterrent value of excluding the evidence will be marginal at best. It is well, therefore, that the Court has left this issue open for consideration by the District Court on remand. See ante, at [61] n. 22, [92 S.Ct. 2357, 2368], [33 L.Ed.2d at 194]." *Id.* at 70, 92 S.Ct. at 2372.

The First Circuit in *In re Lochiatto*, 497 F.2d 803 (1st Cir. 1974), held that the trial court judge should determine the validity of the electronic surveillance, but limited the investigation to facial violations, errors in the authorization or legal invalidity that appears from a limited exploration. *See also In re Mintzer*, 511 F.2d 471, 473 (1st Cir. 1974) (explaining *Lochiatto*). The *Lochiatto* court also provided a defendant with limited discovery rights. A defendant is entitled to have an opportunity to inspect "the authorized application of the Attorney General or his designate, 18 U.S.C. § 2516(1); the affidavits in support of the court order, the court order itself, and an affidavit submitted by the government indicating the length of time the surveillance was conducted" unless the government interposes an objection on secrecy grounds. *In re Lochiatto, supra* at 808. If the government does object on secrecy grounds, the district court judge determines whether the secret information can be successfully deleted or summarized and, if it can be, access to the excerpted material is granted. Only if the district judge determines that so much of the material is sensitive that revealing any of it would prejudice the government, does the court limit itself to an *in camera* review of the materials "to determine the constitutional and statutory validity of the application and the court order based on the warrants, and compliance by the government with the court ordered time limits on surveillance." *Id.* at 808.

Defendants ask us to follow *Lochiatto*. The First Circuit balanced three competing considerations in reaching its resolution of the question left open by the Supreme Court: (1) minimizing the interruption of grand jury proceedings; (2) securing the government's interest in merited secrecy, for example to protect witnesses; and (3) providing the defendant with a right to a meaningful challenge of the legality of the grand jury subpoena before the defendant risks jail. *Id.* at 807–08. The underlying concern of the third consideration, of course, is to protect individual privacy by excluding the fruits of illegal electronic surveillance. This protection also limits the court's entanglement in illegal acts of government agents.

The Second Circuit has reached a different result, holding that a defendant is not entitled to any discovery and that the refusal to testify before the grand jury:

> "would be permissible only if there is an absence of a necessary court order or if there is a concession from the Government that the surveillance was not in conformity with statutory requirements, or if there is a *prior* judicial adjudication that the surveillance was unlawful."

*In re Persico*, 491 F.2d 1156, 1162 (2d Cir.), *cert. denied*, 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158, *reh. denied*, 419 U.S. 1060, 95 S.Ct. 645, 42 L.Ed.2d 657 (1974).

The government in this case argues that we should follow *Persico* and that *Persico* precludes defendants from challenging the lawfulness of surveillance pursuant to court order. While the Second Circuit has not clearly stated that the trial court judge

must examine the challenged court order *in camera* to determine if it appears proper on its face, we believe that such a requirement is implicit in that court's decisions. "Inasmuch as Judge Judd conducted an in camera inspection to ascertain whether they complied with the statute and found that they did comply, Persico received all that he was entitled to receive." *Id.* at 1162. *Cf. In re Millow*, 529 F.2d 770, 772–73 (2d Cir. 1976); *Langella v. Comm'r of Corrections*, 413 F.Supp. 1214, 1217–18 (S.D.N.Y.1976). However, the scope of the *in camera* review is not clear and no provision is made for any discovery. The Fifth and Ninth Circuits have adopted the *Persico* view.[6] *In re Grand Jury Proceedings v. Worobyzt*, 522 F.2d 196, 198 (5th Cir. 1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976); *Droback v. United States*, 509 F.2d 625, 625–26 (9th Cir. 1974), *cert. denied*, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 450 (1975).

▮ The Second Circuit in *Persico* based its opinion on an analysis of section 2518(10)(a)[7] which it believed limited section 2515. While section 2515 includes grand jury proceedings among those hearings before which unlawfully intercepted communications and evidence derived therefrom should not be received, section 2518(10)(a) does not include grand jury proceedings in its enumeration of hearings in which suppression motions may be made. However, the opinion of the Court in *Gelbard* rejected the notion that section 2518(10)(a) limits section 2515 when section 2515 is relied upon as a *defense to civil contempt*. Only when a *suppression motion* is utilized as a method of enforcing the

---

**6.** Apparently the only case in this Circuit to have expressly considered the conflict between *Persico* and *Lochiatto* is *Application of the United States Authorizing the Interception of Wire Communications*, 413 F.Supp. 1321 (E.D. Pa.1976), in which Judge Fogel found it unnecessary to choose because the movant lacked standing. *Id.* at 1331 n. 3.

**7.** Section 2518(10)(a) provides in relevant part:
"Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a

State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—
(i) the communication was unlawfully intercepted;
(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
(iii) the interception was not made in conformity with the order of authorization or approval."

section 2515 prohibition are the restrictions of section 2518(10)(a) applicable. *Gelbard v. United States, supra,* 408 U.S. at 59–61, 92 S.Ct. 2357. This conclusion appears to be accepted by Justice White. His concurrence disregards section 2518(10)(a) and seems to advocate weighing competing policy considerations in determining the scope of the section 2515 defense. *Id.* at 69–71, 92 S.Ct. 2357.

■ Even if the opinion of the court in *Persico* is read as balancing various policy considerations, we believe that the *Lochiatto* procedure is superior. While the *Lochiatto* solution is a far cry from a full-blown suppression hearing, it nevertheless provides the maximum protection to society's interest in privacy without jeopardizing grand jury expedition and secrecy concerns. We believe that this procedure is the type of "different accomodation" that Justice White had in mind in his concurring opinion. *Id.* at 70, 92 S.Ct. 2357.

### III. LOCAL RULE 16(b)

■ The government contends that under Rule 16(b) of our Local Rules of Criminal Procedure, Judge Weiner should determine the validity of his wiretap order. Rule 16(b) provides in relevant part:

"Any motion by an 'aggrieved party,' as defined in 18 U.S.C. § 2510(11) attacking the validity or sufficiency of an order authorizing or approving the interception of a wire or oral communication issued by a Judge of this Court shall be heard by the Judge. Any other motion attacking such interception shall be heard by the Judge to whom the case is assigned."

We do not believe that Rule 16 is pertinent in this civil contempt case since the introductory sentence of that rule limits its application by stating that "the following procedures shall be followed in all criminal cases * * *."

The government will have twenty (20) days to provide defendants and this court with the materials enumerated in the *Lochiatto* opinion. If the government objects to turning the materials over to the defendants on secrecy grounds, we will determine whether the secret information can be successfully deleted or summarized or whether we must review the material *in camera* without the benefit of defendants' input. If the government does not object, defendants will have ten (10) days from the date that they receive all of the materials from the government in which to respond to this court.

### ORDER

AND NOW this 14th day of April, 1977, it is ORDERED that within twenty (20) days from the date hereof, the government shall furnish defendants and this court with the following documents relevant to any electronic surveillance in this case:

(1) the authorized application of the Attorney General or his designate, 18 U.S.C. § 2516(1);

(2) the affidavits in support of the court order;

(3) the court order; and

(4) an affidavit submitted by the government setting forth the length of time the surveillance was conducted.

Defendants will have ten (10) days from the date that they receive all of the above materials from the government in which to respond to the government's motion for contempt pursuant to 28 U.S.C. § 1826(a).