584 A.2d 702

PRINCE GEORGE'S COUNTY POLICE PENSION PLAN, et al.

v.

Edward C. BURKE, Jr., et al.

PRINCE GEORGE'S COUNTY POLICE PENSION PLAN, et al.

v.

Richard HARMAN, et al.

No. 8, Sept. Term, 1990.

Court of Appeals of Maryland.

Jan. 25, 1991.

Wendy Widmann and Kristine K. Howanski (Jeffrey S. Theuer, Semmes, Bowen & Semmes, on brief), Baltimore, for appellants.

Jeffrey W. Bernstein (Gregory M. Wilson, V. Peter Markuski, Jr., Wilson, Goozman, Bernstein & Markuski, Laurel, Donna C. Aldridge, Hyattsville, on brief), for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

CHASANOW, Judge.

In this opinion we will decide two consolidated cases that raise identical issues: 1) whether a trial judge may order, as part of a marital property award, the transfer of a partial interest in a government pension plan to the former spouse of the participant employee and 2) whether the court may order, when payable, the direct disbursement of a fractional share of benefits to the participant's former spouse. The payment to the spouse would be in satisfaction of a marital

property award that divides the pension based on the length of the marriage and the pension benefits accrued during that time.

Appellants in both cases are the Trustees and Retirement Plan Administrator of the Prince George's County Police Pension Plan (the Trustees). Benefits are paid upon normal retirement or disability retirement in the form of an annuity payable monthly to the retiree over the retiree's life, or to the retiree and a contingent annuitant, over their joint lives and the life of the survivor of them. Although conceding that a pension is generally considered marital property, the Trustees dispute the legality of transferring an interest in a local government pension plan and the validity of the court orders instructing the Trustees to make direct payments to the divorced spouses of two participants. The Trustees claim that these orders call for payment from a spendthrift trust and as such, are invalid.

## I.

Edward C. Burke, Jr. was granted a divorce from Maureen M. Burke on April 4, 1986, in the Circuit Court for Prince George's County. As a member of the Prince George's County Police Department, Edward Burke has a vested interest in benefits supplied by the Police Pension Plan. The trial court (Missouri, J.), on September 19, 1989, ordered that Mrs. Burke be given an interest in her husband's pension, calculated as "one-half (½) of a fraction of which the number of years and months of the marriage ... is the numerator and the total number of years and months of employment credited toward retirement is the denominator." The Trustees were ordered to issue Mrs. Burke's portion directly to her when it became payable. The Trustees' motion for intervention was granted on October 18, 1989, and they subsequently appealed the trial court's order. We granted certiorari prior to consideration by the Court of Special Appeals.

In the second controversy before us, Richard Harman and Marie Flore Harman were granted an absolute divorce by the Circuit Court for Prince George's County. At the time of the divorce, Mr. Harman was receiving disability retirement benefits. On May 25, 1989, the court (Woods, J.) ordered, *inter alia,* that Mrs. Harman was entitled to fifty percent of her husband's pension. It was additionally ordered that the Trustees send Mrs. Harman's portion of any benefit payments directly to her. The Trustees intervened in the Harman case, appealed the court's order and, again, we granted certiorari before the Court of Special Appeals ruled on the matter. The two cases were consolidated for the purpose of appeal.

The Trustees contend that the trial court erred in transferring an interest in the pension plan to each of the wives and thereafter requiring direct payment to them by the Trustees. They argue that, because the fund is a spendthrift trust, it cannot be attached by creditors. The Trustees additionally advance that the wives are creditors and, as such, should not be permitted to reach the fund at all. It is additionally insisted that Maryland Code (1974, 1989 Repl. Vol.), Courts & Judicial Proceedings Article, § 11–504(h) takes precedence over Maryland Code (1984, 1990 Cum. Supp.), Family Law Article, § 8–205(a) in the event of a conflict. Section 11–504(h), Cts. & Jud.Proc. Art., reads in pertinent part:

"*Interest in retirement plan.*—(1) ... [A]ny money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a [qualified] retirement plan ... shall be exempt from any and all claims of the creditors of the beneficiary or participant, ....

(2) Paragraph (1) of this subsection does not apply to:

(i) An alternate payee under a qualified domestic relations order, as defined in § 414(p) of the United States Internal Revenue Code of 1986, as amended."

The relevant portion of Family Law Art., § 8–205(a) is as follows:

"(a) *Grant of award.*— ... [A]fter the court deter- mines which property is marital property, and the value of the marital property, the court may transfer ownership of an interest in a pension, retirement, profit sharing, or deferred compensation plan from 1 party to either or both parties, grant a monetary award, or both, as an adjust- ment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded.

\* \* \* \* \* \*

(c) *Award reduced to judgment.*—The court may re- duce to a judgment any monetary award made under this section, to the extent that any part of the award is due and owing."

The Trustees use section 11–504 as both a sword and a shield, contending that the pension plan falls under the auspices of the appropriate sections of the Internal Revenue Code and, therefore, is exempt from all claims of creditors with few exceptions not applicable in this case. Although qualified domestic relations orders (QDROs) are specifically excepted under section 11–504(h)2, the Trustees maintain that the subsection does not apply in the instant cases since this is a government pension plan. We need not decide the aforementioned issue to resolve these cases, but for the purpose of this opinion, we will assume without deciding that the Trustees are correct.[1] It is further asserted by the Trustees that since QDROs are expressly excluded from the

---

1. We recognize that the Prince George's County Police Pension Plan is a local government plan. The Appellants argue that the plan is not amenable to the Qualified Domestic Relations Order (QDRO) excep- tion of Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, § 11–504(h) based on their reading and interpre- tation of the referenced Title 26 U.S.C. §§ 401(a)(13) and (29), 411, 414(d) and (p) that QDRO provisions do not apply to governmental plans. We will not reach this issue. However, even if we assume without deciding that the Trustees are correct, whether the orders fall under the QDRO exception is irrelevant, as will be clarified *infra,* because the former spouses are not creditors and therefore, Cts. & Jud.Proc. Art., § 11–504 is inapplicable.

exemption under section 11–504, the Legislature intended to treat domestic relations orders as "claims of creditors."

Citing *Hoffman Chev. v. Wash. Co. Nat'l Sav.*, 297 Md. 691, 705–06, 467 A.2d 758, 766 (1983), the Trustees claim that, because the pension plan's terms impose a restraint on alienation of plan benefits, the plan constitutes a spendthrift trust under the common law of Maryland and, therefore, is protected from attachment or invasion by creditors of a beneficiary. The non-alienation terms of the Prince George's County Police Pension Plan state:

"11.1 Any benefit which shall be payable under the Plan shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge any such benefit shall be void ... and any such benefit shall not in any manner be liable for or subject to the debts, contracts, liabilities, engagements or torts of the person who shall be entitled to such benefit, nor shall it be subject to attachment or legal process for or against such person."

For the purpose of this opinion, we again will assume without deciding that the plan is a spendthrift trust and cannot be reached by creditors of a beneficiary. Any assumptions we make in favor of the Trustees become irrelevant, however, because we hold that the ex-spouses in the instant cases are not creditors. The Trustees also argue that both trial judges exceeded their authority 1) by transferring a partial ownership interest in the plan to a non-participant former spouse and 2) by ordering direct payments of benefits to a creditor. These contentions must fail because we do not deem the former spouses to be creditors.

## II.

It is a well-settled principle in Maryland divorce law that pension benefits, to the extent accumulated during marriage, are marital property. *Deering v. Deering*, 292

Md. 115, 437 A.2d 883 (1981).[2]   A work-related disability pension plan likewise has been found to constitute marital property. *Lookingbill v. Lookingbill,* 301 Md. 283, 483 A.2d 1 (1984). "Pension payments are actually partial consideration for past employment whether the maturity of the pension is contingent upon age and service or upon disability." *Id.* at 289, 483 A.2d at 4.

In *Deering,* we recognized that both spouses rely on a pension that is common to the marriage unit and both would have the same retirement ambitions whether they were counting on pension benefits or whether they chose to provide for their golden years using other investments. 292 Md. at 125, 437 A.2d at 888. *See also Niroo v. Niroo,* 313 Md. 226, 233, 545 A.2d 35, 39 (1988) (both spouses rely on a pension to provide for their future). The pension takes money earned by one spouse away from the marriage unit and defers its use to some future date. "Deferral of that compensation obviously affects the spouse of the pension plan member, not only in the sense that it diminishes current income, but also because it slows the buildup of marital assets." *McDermott v. McDermott,* 119 A.D.2d 370, 507 N.Y.S.2d 390, 394–95 (1986), *appeal dismissed,* 69 N.Y.2d 1028, 517 N.Y.S.2d 938, 511 N.E.2d 81 (1987). Therefore, equity prescribes that this deferral does not alter the status of the asset as marital property.

The policy set forth through the Marital Property Act, Md.Code (1984, Cum.Supp.1990), Family Law Art., §§ 8–201 to 8–213, is that " 'when a marriage is dissolved the property interests of the spouses should be adjusted fairly and equitably, with careful consideration given to both monetary and nonmonetary contributions made by the respective spouses.' " *Queen v. Queen,* 308 Md. 574, 577, 521 A.2d 320, 322 (1987) (quoting *Unkle v. Unkle,* 305 Md. 587, 595,

---

2.   Md.Code (1989, 1990 Cum.Supp.), Family Law Article, § 8–205(a), permitting transfer of ownership of an interest in a pension by a divorce court, was enacted by Chapter 765 of the Acts of 1986 subsequent to our decision in *Deering.*

505 A.2d 849, 853 (1986)). The Act was meant to correct the historical inequities inherent in Maryland's old "title" system of allocating marital property. *Unkle*, 305 Md. at 595, 505 A.2d at 853 (citing the Report of the Governor's Commission on Domestic Relations Laws (1978)).

■ Under section 8–205, the court is expressly granted the power to transfer *ownership* of an interest in a pension or retirement plan from one spouse to another in order to secure an equitable distribution of the marital assets. It must be noted that the "Marital Property Act should be construed liberally to effect its broad remedial purpose." *Queen*, 308 Md. at 586, 521 A.2d at 327; *see also Harper v. Harper*, 294 Md. 54, 64, 448 A.2d 916, 921 (1982). It is a general rule that, when evaluating a statute, the words are to be read in context and given their ordinary meaning. *Harford County v. University*, 318 Md. 525, 529, 569 A.2d 649, 651 (1990). If the language is "so clearly consistent with apparent purpose (and not productive of any absurd result)" then "further research will be unnecessary." *Kaczorowski v. City of Baltimore*, 309 Md. 505, 515, 525 A.2d 628, 633 (1987). The language and intent of section 8–205 could not be plainer.

■ Since 1986, Maryland divorce courts have been endowed with the ability to transfer ownership of an interest in pension and retirement benefits. Chapter 765 of the Acts of 1986, now codified as Family Law Art. § 8–205. The limited instances enumerated in section 8–205 are the *only* circumstances where a divorce court may transfer an ownership interest. *See Herget v. Herget*, 319 Md. 466, 470–71, 573 A.2d 798, 800 (1990). The General Assembly articulated its intentions succinctly and unambiguously in restricting the bounds of section 8–205. The Legislature stated that section 8–205 was enacted "[for] the purpose of authorizing the court that determines which property is marital property to *transfer ownership of an interest* in a pension, retirement, profit sharing, or deferred compensation plan from a party to either or both parties, and to determine the

terms of the transfer." Chapter 765 of the Acts of 1986 (emphasis added).

Whether the pension is a spendthrift trust is immaterial to the issue at hand. The husbands' pensions are not being used to discharge debts that they owed to their wives. Rather, the courts called for the equitable distribution of marital property and ordered that each spouse be paid his or her rightful portion as it becomes due.[3] When a pensioner becomes eligible to collect, the spouse becomes eligible to collect his or her share as a co-owner, not as a creditor.

Nothing in the Marital Property Act supports the assertion that a pensioner's ex-spouse should be categorized as a creditor. Rather, logic dictates that once the court, sanctioned by section 8–205, uses its power to transfer ownership rights in a pension or retirement plan, the ex-spouse becomes an owner of a portion of the plan. Appellant would have us rule that, with the issuance of the divorce decree and division of marital assets that include a pension, a wife is automatically transformed from a partner in marriage into a general unsecured creditor. Such a ruling would not only be contrary to reason, but would fly in the face of sound public policy.

Appellant maintains that, when there is a conflict, section 11–504(h) of the Courts and Judicial Proceedings Article takes precedence over section 8–205 of the Family Law Article. As discussed *supra,* section 11–504(h)(1) exempts disbursements payable to a pension beneficiary from claims of the beneficiary's creditors. Since we find that the for-

---

**3.** In *Graham v. Graham,* 396 Pa.Super. 166, 578 A.2d 459 (1990), a husband argued that the court, in attempting to equitably distribute the marital assets, improperly attached his pension by awarding his wife an interest in the fund. The existence of an exemption statute was of no consequence to the court, which decided that " '[i]t would be terribly unfair to read an exemption statute, which was created to protect a pension for the benefit of a retired employee's family,' " in a way that would hurt the very people it was designed to protect and " 'once again deny them the benefits of the income they sacrificed to a pension years before.' " *Id.* 578 A.2d at 461 (quoting *Young v. Young,* 507 Pa. 40, 488 A.2d 264 (1985)).

mer spouse is not a creditor, there is no friction between the two provisions and the question of statutory dominance need not be resolved.

■ We hold that the trial judges properly utilized their authority by transferring an interest to Mrs. Burke and Mrs. Harman, respectively, in each of their ex-husband's pension benefits. The Prince George's County Police Pension Plan may properly be ordered to tender direct payment to the former spouses of plan participants.

JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.