591 A.2d 481

Mohammed MUSTAFA and **Andarge Asfaw**

v.

STATE of Maryland.

No. 114, Sept. Term, 1990.

Court of Appeals of Maryland.

June 25, 1991.

Alan J. Goldstein (Leonard Russell Stamm, Greenbelt, Joseph F. Vallario, Jr., Steven G. Chappelle, Suitland, all on brief), for appellants.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned, and LLOYD L. SIMPKINS, Judge of the First Judicial Circuit of Maryland (retired), Specially Assigned.

MURPHY, Chief Judge.

This case has been certified to us by the Court of Special Appeals pursuant to Maryland Rule 8–304(a).[1] The single question presented is whether the Maryland Wiretap and Electronic Surveillance Act, Maryland Code (1989 Repl. Vol.), §§ 10–401 through 10–414 of the Courts and Judicial Proceedings Article (the Maryland Act), "precludes the admission in evidence in a Maryland court of the contents of an electronically recorded telephone conversation between a person in the District of Columbia and a person in Maryland if (1) the recording was made by the person in the District of Columbia without the knowledge and consent of the other person and without the authorization required by § 10–408 [of the Courts Article] but (2) the making of the recording was permissible under the law of the District of Columbia."[2]

## I.

The relevant facts, as set forth in the certification order, are as follows:

"In April, 1989, Corporal John Bartlett of the Prince George's County Police was introduced by an FBI agent to Peter Dilliner, a paid informant who lives in the District of Columbia. Bartlett wanted to arrange a drug transaction in his jurisdiction. For a fee of $2,500, Dilliner agreed to have a drug dealer set up a buy of two kilograms of cocaine in Prince George's County. Dilliner was acquainted with ap-

---

**1.** This Rule provides:
   "(a) **Initiation.**--At any time before issuance of a mandate, the Court of Special Appeals or the panel of that Court to which the action has been assigned may certify a question of law or the entire action to the Court of Appeals. Upon transmission to the Court of Appeals, a copy of the certification shall be forwarded to the Chief Judge of the Court of Special Appeals and to the parties. The Court of Appeals may consider the certification pursuant to its authority to issue a writ of certiorari on its own motion."

**2.** Section 10–408 outlines the procedure and substantive requirements for obtaining an ex parte order of court authorizing the interception of wire, oral, or electronic communications.

pellant Asfaw, and enlisted Asfaw's help in obtaining the cocaine without disclosing the police involvement.

"Dilliner engaged in several telephone conversations with Asfaw and a person known to Dilliner as 'Maurice,' believed by Dilliner to be the appellant Mustafa. From his home in the District of Columbia, Dilliner telephoned Asfaw 'ten or twelve times' at Asfaw's business address in Maryland. He also received calls at his home from Asfaw and Maurice. Dilliner said he did not know where the incoming calls from either defendant originated but, according to Bartlett, all of the telephone conversations were between D.C. and Prince George's County. Using his own tape recorder attached to his telephone in the District of Columbia, Dilliner recorded all of his telephone conversations with Asfaw and Maurice.

"Dilliner acknowledged that he recorded the conversations without authorization from or knowledge of the recording by Officer Bartlett. He said he advised Bartlett two days after he discussed the cocaine purchase with Asfaw that he was taping the telephone calls, but Bartlett claimed that he did not learn of the taping until after the arrest of the various participants. In either event, the initial taping was not authorized by the police. Nevertheless, Dilliner gave the tape to Corporal Bartlett, and its existence was disclosed to appellants as a result of their requests for discovery.

"Both Mustafa and Asfaw filed pre-trial motions to suppress the recorded telephone conversations. Those motions were denied, and at the ensuing jury trial [in the Circuit Court for Prince George's County] the recordings were admitted into evidence over objection."

Mustafa was convicted of possession of cocaine with intent to distribute, possession of cocaine, and conspiracy to distribute cocaine. The conviction for possession of cocaine was merged into the conviction for possession with intent to distribute. Asfaw was convicted of conspiracy to distribute cocaine. After sentences were imposed, Mustafa and Asfaw appealed to the Court of Special Appeals.

## II.

Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2521 (1979, 1990 Cum.Supp.) provides uniform minimum standards governing the interception and use of oral, wire, and electronic communications in connection with the prosecution of certain criminal offenses. The federal act seeks to protect the privacy of the individual while at the same time aiding in the enforcement of the criminal laws. *United States v. Kahn*, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974); *Ricks v. State*, 312 Md. 11, 13, 537 A.2d 612, *cert. denied*, 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988). Title III requires an effectuating state law before it can be applied within the state. *State v. Siegel*, 266 Md. 256, 271–72, 292 A.2d 86 (1972). The state law may not be less but may be more restrictive than the federal law. 18 U.S.C. § 2516(2); *Ricks, supra*, 312 Md. at 14, 537 A.2d 612. The Maryland Act was modeled on the federal act and closely tracks its provisions; however, the Maryland legislature has made some of the provisions of the State Act more restrictive than the federal law. *See Wood v. State*, 290 Md. 579, 583, 431 A.2d 93 (1981); *State v. Baldwin*, 289 Md. 635, 641, 426 A.2d 916, *cert. denied*, 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 144 (1981); *State v. Bailey*, 289 Md. 143, 151, 422 A.2d 1021 (1980); *A Diagnosis, Dissection, and Prognosis of Maryland's New Wiretap and Electronic Surveillance Law*, 8 U.Balt.L.Rev. 183, 191 n. 45 (1979).

Subject to other provisions of the Maryland Act, § 10–402(a)(1), (2) and (3), respectively, make it unlawful for any person to willfully intercept, disclose, or use any wire, oral, or electronic communication. Section 10–402(c)(2) provides that it is lawful for an investigative or law enforcement officer acting in a criminal investigation, or any person acting under the prior direction of that officer, to intercept such communications in order to provide evidence of the commission of a number of specifically enumerated criminal offenses, including trafficking in controlled danger-

ous substances.[3] This provision requires that the person intercepting the communication be a party "to the communication or [that] one of the parties to the communication has given prior consent to the interception." Thus, where a police informant, as in this case, does not act under the prior direction of an investigative or law enforcement officer when intercepting a communication, the provisions of § 10–402(c)(2) do not legalize the disclosure of that communication in a Maryland court.

Maryland's two-party consent provision, a departure from the federal act, is contained in § 10–402(c)(3); it makes it unlawful, with other exceptions not here pertinent, for a "person" to intercept a wire, oral, or electronic communication unless the person "is a party to the communication and where all of the parties to the communication have given prior consent to the interception."[4]

Section 10–405 provides, as to an intercepted communication, that "no part of the contents of the communication and no evidence derived therefrom may be received in evidence in any trial ... if the disclosure of that information would be in violation of [the Act]." Section 10–407 contains a number of provisions, none of which are apposite to the facts in the present case, authorizing disclosure of the contents of communications intercepted in accordance with the provisions of the Maryland Act, or of evidence derived therefrom. Specifically, § 10–407(c) permits such disclosure by a person in a Maryland court if the communication

---

3. As enumerated in this section, the offenses are "murder, kidnapping, rape, a sexual offense in the first or second degree, child abuse, gambling, robbery, any felony punishable under the 'Arson and Burning' subheading of Article 27, bribery, extortion, or dealing in controlled dangerous substances, including violations of Article 27, § 286B or § 287A, or any conspiracy or solicitation to commit any of these offenses."

4. Section 10–401(5) defines a "person," for purposes of the Maryland Act, as "any employee or agent of this State or a political subdivision thereof, and any individual."

was intercepted "by any means authorized by this subtitle." Section 10–407(f) provides:

"Any investigative or law enforcement officer [of another state] ... who has lawfully received any information concerning wire, oral or electronic communication or evidence lawfully derived therefrom, which would have been lawful for a law enforcement officer of this State pursuant to § 10–402(c)(2) ... to receive, may disclose the contents of that communication or the derivative evidence while giving testimony [in court]."

Under the federal law, a wire or oral communication may be intercepted by a person acting under color of law if the person is a party to the communication, or if one of the parties to the communication has given prior consent to the interception. 18 U.S.C. § 2511(2)(c). Even a party not acting under color of law may intercept a wire or oral communication if a party to the communication or if one of the parties to the communication has given consent, as long as the purpose of the interception is not in violation of state or federal law. § 2511(2)(d). The Maryland Act, on the other hand, specifies that except in connection with the offenses enumerated in § 10–402(c)(2) (which include trafficking in controlled dangerous substances), oral, wire, or electronic communications may be intercepted only if the interceptor is a party to the communication and *all* of the parties to the communication have given prior consent to the interception, and the interception is for a lawful purpose. As earlier observed, Dilliner was not acting at the direction of an investigative or law enforcement officer when he intercepted the communications in this case; hence, two-party consent was required before the intercepted communications were admissible in a Maryland court.

### III.

The parties agree that Dilliner's use of a tape recorder attached to his telephone in the District of Columbia to intercept the communications here involved was lawful under 18 U.S.C. § 2511(2)(c) and (d). They also agree that the

interception would not have been lawful had it been made in Maryland.

Appellants contend that the admission of Dilliner's tape recordings in evidence was improper because § 10–407(c) permits the disclosure of intercepted information only if it is derived "in accordance with the provisions of this subtitle." They argue that because the interception was not in compliance with Maryland's two party consent provisions, the evidence should have been excluded at trial. Moreover, they urge that § 10–407(f) requires the exclusion of the phone conversations recorded in the District of Columbia. They claim that this subsection only permits law enforcement officers to testify about wire, oral, or electronic communications, or evidence derived therefrom, "which would have been lawful for a law enforcement officer of this State pursuant to § 10–402(c)(2) of this subtitle to receive." Appellants suggest that this provision mandates that because the taping was not lawful under the more restrictive Maryland law, it should not have been admitted at trial.

The State contends that the exclusionary rule does not apply to evidence lawfully intercepted outside of Maryland because the law of the locality where the interception occurred governs its validity. It relies upon *Stowe v. Devoy*, 588 F.2d 336 (2nd Cir.1978), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2862, 61 L.Ed.2d 299 (1979). The State posits that the Maryland Act merely provides that the contents of the intercepted communications are inadmissible if disclosure is in violation of the Maryland Act. The State argues that there was no violation of the Maryland Act because the statute's reach does not extend beyond the territorial jurisdiction of this State.

IV.

Whether Maryland's more restrictive two-party consent provision precludes the admission in evidence of a communication which, although validly intercepted under the law of the District of Columbia, violates Maryland's

statute is essentially a matter of statutory construction. In interpreting the Act's provisions, our goal is to ascertain and effectuate the intention of the legislature. Our focus is, therefore, centered upon the statute's purpose or policy. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987). *See also Harford County v. University*, 318 Md. 525, 539, 569 A.2d 649 (1990); *Motor Vehicle Admin. v. Mohler*, 318 Md. 219, 225, 567 A.2d 929 (1990). Where statutory language is unambiguous, and clearly consistent with the statute's apparent purpose, the words will be accorded their ordinary significance. *Prince George's County v. Burke*, 321 Md. 699, 706, 584 A.2d 702 (1991); *Tatum v. Gigliotti*, 321 Md. 623, 628, 583 A.2d 1062 (1991); *Trimble v. State*, 321 Md. 248, 265, 582 A.2d 794 (1990).

Both the state and federal laws make it unlawful to "[w]illfully intercept ... any wire, oral, or electronic communication" unless otherwise specifically authorized. § 10–402(a); 18 U.S.C. § 2511(1)(a), (b). Both the state and federal laws contain an exclusionary rule for evidence seized in violation of their provisions. § 10–405; 18 U.S.C. § 2515. The purpose of these exclusionary rules is "to deter law enforcement officers from violating privacy rights by ensuring that the courts do not become partners in illegal police conduct," *Sanders v. State*, 57 Md.App. 156, 167, 469 A.2d 476, *cert. denied*, 299 Md. 656, 474 A.2d 1345 (1984) (citing *People v. Fidler*, 72 Ill.App.3d 924, 29 Ill.Dec. 51, 52, 391 N.E.2d 210, 211 (1979)); *see also Re Grand Jury Proceedings*, 613 F.2d 1171, 1175 (D.C.Cir.1979); *Re Proceedings to Enforce Grand Jury Subpoenas*, 430 F.Supp. 1071, 1072–73 (D.C.Pa.1977). We necessarily consider the application of the exclusionary rule in the context of the privacy interest in communications which the Maryland Act is designed to protect.

The exclusionary provision in § 10–405 of the Maryland Act precludes the admission of evidence which was not lawfully intercepted. The language of this section is unambiguous, and provides for no exceptions. There is no indication that the legislature intended to adopt anything but the

"all-encompassing exclusionary rule which it unequivocally fashioned in § 10–405." *Wood v. State, supra,* 290 Md. at 584, 431 A.2d 93. Indeed, the provisions of the Maryland Act constitute a declaration of the public policy of this State. *See Harrison v. Mont. Co. Bd. of Educ.,* 295 Md. 442, 460, 456 A.2d 894 (1983); *Adler v. American Standard Corp.,* 291 Md. 31, 45, 432 A.2d 464 (1981).

One of the clear purposes of the more restrictive consent provision of the Maryland Act is to prevent "the unauthorized interception of communications where one of the parties has a reasonable expectation of privacy." *Benford v. American Broadcasting Companies, Inc.,* 554 F.Supp. 145, 151 (D.Md.1982). The two-party consent provision of the Maryland Act is aimed at providing greater protection for the privacy interest in communications than the federal law. Because such an interception is not permissible under the Maryland Act, it may not be lawfully disclosed in a Maryland court under § 10–407.

While § 10–407(f) of the Maryland Act applies to officers from other jurisdictions, and not to informants, the language of this section also supports the view that the General Assembly intended to permit the admission of the challenged evidence in this State only if it comports with § 10–407's provisions governing lawful disclosure. Thus, evidence intercepted pursuant to more lenient statutory enactments of other jurisdictions must comply with Maryland's more restrictive standards before it may be lawfully disclosed in a Maryland court. In the words of § 10–407(f), law enforcement officers of other jurisdictions may only disclose the contents of a communication or the derivative evidence in a proceeding in this State if it "would have been lawful for a law enforcement officer of this State pursuant to § 10–402(c)(2) of this subtitle to receive." *See Sanders v. State,* 57 Md.App. 156, 469 A.2d 476 (1984).

■  It is plain that the legislative intent in the Maryland Act was to inhibit the disclosure in Maryland courts of the content of communications not intercepted in conformity

with the public policy of this State as evidenced by the provisions of its governing law. In other words, the Maryland Act precludes the admission of a communication intercepted, no matter where, under circumstances inconsistent with this State's substantive law. Under the facts in the present case, it would not have been lawful under the Maryland Act to disclose the content of the intercepted communications, even though lawfully intercepted in the District of Columbia, because the intercepting party under § 10–402(c)(2) was neither a law enforcement officer, nor a person acting under the direction of a law enforcement officer.

The dissenting opinion in this case relies upon *People v. Barrow*, 133 Ill.2d 226, 257–58, 139 Ill.Dec. 728, 741–42, 549 N.E.2d 240, 253–54 (1989); *Commonwealth v. Bennett*, 245 Pa.Super. 457, 460–62, 369 A.2d 493, 494–95 (1976); and *State v. Mayes*, 20 Wash.App. 184, 579 P.2d 999, 1004–05 (1978) to support the proposition that the Maryland Act should not be interpreted to preclude the use, in a Maryland court, of communications lawfully intercepted in another state. The state statutes interpreted in those cases contain exclusionary provisions less restrictive than those of the Maryland Act. Specifically, the wiretapping and electronic surveillance statutes in Illinois and Washington, *see Bennett* and *Mayes*, contain no provisions comparable to § 10–407(f), which links the admissibility of evidence in this State to compliance with the Maryland Act. Ill.Rev.Stat. 1983, ch. 38, par. 14–1 *et seq.;* Wash.Rev.Code, § 9.73010 *et seq.* (1989). Pennsylvania's statute in *Barrow* expressly authorizes disclosure by anyone who has obtained knowledge "by any means authorized by the laws of another state or the Federal government." 18 Pa.Cons.Stat. § 5717(c) (1983).

We recognize that Maryland may not ordinarily proscribe conduct occurring outside its boundaries. Quite plainly, however, it may regulate the admissibility of evidence in its courts. In this regard, the State's reliance upon *Stowe v. Devoy, supra,* is misplaced; that case implicated the provi-

sions of the federal act as to the admissibility of evidence in a federal court extradition case, which was obtained from a wiretap lawfully occurring in a foreign country. The case is inapposite on its facts and has no bearing upon the proper interpretation of the Maryland Act.

Thus, under the certified facts in this case, we conclude that the Maryland Act precludes the disclosure in a Maryland court of communications seized by Dilliner, who was not acting under the direction or supervision of an investigative or law enforcement officer. Accordingly, for the reasons stated, the trial court erred in admitting the tape recordings in evidence in this case.

CERTIFIED QUESTION ANSWERED AS HEREIN SET FORTH; CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR FURTHER PROCEEDINGS. COSTS TO ABIDE THE RESULT.

McAULIFFE, J., dissents.

McAULIFFE, Judge, dissenting.

I agree that the question certified by the Court of Special Appeals involves interpretation of the Maryland Wiretap and Electronic Surveillance Act.[1] I do not agree that the correct interpretation of the Act requires the exclusion of evidence lawfully obtained in a foreign jurisdiction.

Section 10–405 of the Act prohibits the admissibility of direct and derivative information "if the disclosure of that information would be in violation of this subtitle." Section 10–402(a)(2) makes it unlawful to disclose the contents of certain communications "knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle."

Accordingly, the proper inquiry in this case is whether the information was obtained through an interception that

---

**1.** Sections 10–401 through 10–414 of the Courts and Judicial Proceedings Article, Maryland Code (1989 Repl.Vol.).

was "in violation of this subtitle." Section 10–402 provides that all interceptions, other than those specifically spelled out in the Act as exceptions, are unlawful. The interception involved in this case was not within any of the enumerated exceptions. Therefore, the majority reasons that the interception must have been "in violation of" the Maryland Act.

I disagree. The interception with which we are concerned occurred in the District of Columbia. Section 10–401(3) provides that " '[i]ntercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Both parties agree that the interception, although it would not have been lawful if made in Maryland, was lawful when made in the District of Columbia. The Maryland Act defines unlawful acts of interception and disclosure in § 10–402(a). In § 10–402(b), the Act provides that "[a]ny person who violates subsection (a) of this section is guilty of a felony and is subject to imprisonment for not more than 5 years or a fine of not more than $10,000, or both."

The Maryland Act, making certain interceptions felonies, does not reach the interception made in this case. Dilliner could not be convicted of the felony of intercepting this conversation. He did not, in short, violate the Maryland Act when he made an interception in the District of Columbia.[2] The exclusion of evidence mandated by § 10–405 is limited to situations where the interception was "in violation of" the Maryland Act, and that is not the situation here.

I do not suggest that the General Assembly lacks authority to exclude evidence of this kind, at least when offered by the State. I am convinced, however, that it did not do so here. The exclusion mandated by the statute is limited to information obtained through interceptions in violation of

---

**2.** I do not address the question of whether Maryland could impose criminal sanctions for the extra-territorial interception of conversations involving persons physically located within this State. The Maryland Act does not attempt to make this distinction.

the Act, *i.e.*, interceptions for which one could be prosecuted under the Act. Exclusionary rules exact a heavy penalty. Reliable evidence, often essential to a successful prosecution, may be lost. Experience has taught us that in some instances the imposition of an exclusionary rule may be required to deter law enforcement officers from violating certain constitutional rights. *Mapp v. Ohio*, 367 U.S. 643, 656, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081 (1961). Where, however, the goal of deterrence will not be advanced, exclusion may not be appropriate. *United States v. Leon*, 468 U.S. 897, 916–22, 104 S.Ct. 3405, 3417–20, 82 L.Ed.2d 677 (1984).

Other state courts have held that evidence gathered by officers of a foreign state, and in accordance with the laws of that foreign state, is properly admitted in the forum state, although the complained-of action would violate the forum state's eavesdropping statute. *See People v. Barrow*, 133 Ill.2d 226, 257–58, 139 Ill.Dec. 728, 741–42, 549 N.E.2d 240, 253–54 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3257, 111 L.Ed.2d 767 (1990) (evidence was not "obtained in violation" of Illinois law within meaning of Illinois exclusionary provision where evidence was validly intercepted in Maryland, even though interception would have been invalid if accomplished in Illinois); *Commonwealth v. Bennett*, 245 Pa.Super. 457, 460–62, 369 A.2d 493, 494–95 (1976) (information obtained from wiretap, valid where conducted in New Jersey but which would have been unlawful if conducted in Pennsylvania, is admissible in Pennsylvania prosecution—"any other conclusion would result in an unwarranted extension of the exclusionary rule"); *State v. Mayes*, 20 Wash.App. 184, 579 P.2d 999, 1004–05 (1978) (Washington statute prohibiting admissibility of information obtained from interceptions made "in violation of" the statute does not require exclusion of evidence obtained from interception made in California and valid under California law).

The interception in this case was entirely lawful when and where made. Exclusion of the evidence is not, therefore,

needed to punish a violation of law or to deter others from similar conduct. The majority's holding, it should be noted, would apply with equal force to a communication occurring entirely within the District of Columbia. The legislature fashioned an exclusionary rule applicable to all interceptions occurring within the State of Maryland. So interpreted, § 10–405 has a valid and understandable purpose. The majority unnecessarily extends the exclusionary rule to activities which would have constituted a violation of Maryland law if they had occurred here, rather than limiting the exclusion, as the legislature has done, to actions that do, in fact, violate the Maryland Act. In so doing, the majority enlarges the exclusionary rule beyond the apparent intent of the legislature, and beyond the ordinary purpose and function of an exclusionary rule of evidence.

I would instruct the Court of Special Appeals that the Maryland Act does not exclude evidence of the telephone conversation involved in this case.