*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CM-1380

DAVID THOMAS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(DVM-1501-15)

(Hon. José M. López, Motions Judge)
(Hon. Robert E. Morin, Trial Judge)

(Argued April 20, 2017                                      Decided October 12, 2017)

*Fletcher P. Thompson* for appellant.

*Valinda Jones*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Marisa S. West*, Assistant United States Attorneys, were on the brief, for appellee.

Before MCLEESE, *Associate Judge*, and WASHINGTON and FARRELL, *Senior Judges*.

WASHINGTON, *Senior Judge*: David Thomas ("appellant") was found guilty of attempted voyeurism for photographing his sexual partner while she slept nude next to him and without her consent. Appellant sent the photograph to an unknown

number of third parties and the photograph made its way online. The victim notified law enforcement, and a recorded phone conversation was arranged between the victim and appellant, with only the victim's consent and knowledge that the conversation was being recorded. On appeal, appellant argues that the audio recording was unlawful under Maryland law where he was located during its recording, and therefore, the trial court erred in denying his motion to suppress. We affirm.

## I.

In April of 2013, appellant and the victim, J.P., met while they were both students at Howard University. The pair briefly dated and became sexually intimate on one occasion in J.P.'s bedroom. Unbeknownst to J.P., appellant photographed her exposed back and buttocks while she slept. This photograph, which was introduced into evidence, depicted J.P. lying on her left side with her back to the camera. Although J.P.'s face could not be seen, she recognized her body, comforter, pillows, and pillow cases in the photograph. She also recognized several identifying items that appellant had staged around and on her body. These included a hand-made poster board made by the victim's father, which visibly displayed the victim's name in large letters, the Greek letters identifying her sorority, and a message from her family; a purple and gold tee-shirt with a logo

and motto associated with appellant's fraternity pledge class; a purple bracelet worn by appellant; and a used condom and its wrapper displayed on her thigh. The victim never consented to the photograph. J.P. testified that she had never seen anyone in her house wearing the T-shirt in the photograph that appellant was wearing that night.

J.P. first became aware of the photograph's existence roughly six months later when a mutual friend told her that the photograph had been posted in an online private chat room. Some months later, J.P. received a text message from a sorority sister that included a screenshot of the photograph. Now that she possessed a copy of the photograph, J.P. promptly filed a police report.

In December of 2014, J.P. met with Detective Wilfred Yulfo who arranged for her to call appellant to discuss the photograph. The phone conversation was made from J.P.'s cell phone to appellant's cell phone from a police station in the District and in Detective Yulfo's presence. J.P. consented to the conversation being recorded. Appellant, however, was on a train traveling from New York to D.C. at the time of the phone conversation and indicated at the end of the conversation that he was in Maryland. During the conversation, J.P. asked appellant why he took the photograph and then distributed it to others online.

Appellant responded that he was sorry he took the photograph and that he only sent it to one other person, who then shared it with others online. J.P. also asked why appellant staged items in the photograph. He responded that it was an immature thing "you do after you cross" (*i.e.*, to be accepted into a fraternity or sorority).

On August 12, 2015, appellant was charged by information with one count of Voyeurism–Privacy,[1] subsequently amended to attempted voyeurism. Appellant moved to suppress the phone recording on the grounds that appellant was in Maryland at the time of the call, where ordinarily two-party consent is required to intercept a phone conversation. On December 7, 2015, Judge José M. López denied appellant's motion to suppress, and appellant was found guilty of attempted voyeurism based on the photograph, J.P.'s testimony, and appellant's audio recorded admission. Appellant was sentenced to 90 days' incarceration, with execution of the sentence suspended in favor of one year of supervised probation and ninety hours of community service. Appellant now challenges his conviction arguing that Judge López erred in denying his motion to suppress.

---

[1] D.C. Code § 22-3531 (c)(1)(B), (d) (2012 Repl.).

## II.

The issue before this court concerns the legality and admissibility of the intercepted audio recording. More particularly, the issue is whether a recording made in the District of Columbia involving an interstate communication that only one party consented to is admissible in our courts. In this case, appellant argues that a Maryland law, which limits the admissibility in Maryland courts of any recorded conversation where both parties to the conversation did not consent to its recording, governs the admissibility of this recording at his criminal trial in the District, even though District of Columbia law is less restrictive. In essence appellant argues that D.C. Code § 23-551 (b)(1), the District of Columbia statute that authorizes the suppression of "unlawfully intercepted" communications, must be interpreted in light of Maryland law because he was in Maryland at the time the communication was intercepted. Appellant concedes that the intercept would have been lawful under District of Columbia law if both parties had been in the District; however, he contends that the District's suppression statute is not expressly limited to "the law of any particular jurisdiction," and therefore, the trial court should have

applied Maryland law under these circumstances.[2]  We are not persuaded by appellant's arguments.

"On appeal from a denial of a motion to suppress, we review the legal conclusions of the trial court *de novo* and defer to its findings of fact." *Lyons v. United States*, 833 A.2d 481, 485 (D.C. 2003). We also review questions of statutory interpretation *de novo*. *Holloway v. United States*, 951 A.2d 59, 60 (D.C. 2008). In endeavoring to discern the meaning of any particular statute, "[t]he primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he or she used." *Clark Constr. Grp., Inc. v. District of Columbia Dep't of Emp't Servs.*, 123 A.3d 199, 202-03 (D.C. 2015) (internal quotation omitted). "Interpreting a statute or a regulation is a holistic endeavor," whereby we consider a statute in the context of its entire statutory scheme and the language of surrounding and related paragraphs. *W.H. v. D.W.*, 78 A.3d 327, 337 (D.C. 2013) (internal quotation omitted).

---

[2] In Maryland it is unlawful, in the absence of two-party consent, for "an investigative or law enforcement officer acting in a criminal investigation or any other person acting at the prior direction and under the supervision of an investigative or law enforcement officer to intercept a wire, oral, or electronic communication" unless the intercept is to provide evidence for specific enumerated offenses, of which voyeurism is not one. Md. Code Ann., Cts. & Jud. Proc. § 10-402 (c)(2)(ii) (West 2015).

Under D.C. Code § 23-542,[3] the legislature has clearly defined what acts of interception, disclosure, and use of wire or oral communications are lawful or unlawful in the District of Columbia. If an intercepted audio recording does not meet one of the enumerated criteria, then under § 23-551 (b)(1)[4] a defendant may move to suppress. The one-party consent recording here clearly falls within the purview of our statute. *See* D.C. Code § 23-542 (b)(2). It also provides that the only exceptions are those "specifically provided in this subchapter." D.C. Code § 23-542 (a). While appellant argues that the language of § 23-551 (b)(1) does not expressly limit the admissibility of recorded conversations to those lawfully obtained under the District's surveillance statute, we do not read the statute as incorporating the laws of any other jurisdiction. Nowhere in this subchapter has the legislature authorized the inclusion of the law of another jurisdiction despite

---

[3] "It shall not be unlawful under this section for . . . a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication, or where one of the parties to the communication has given prior consent to such interception . . . ." D.C. Code § 23-542 (b)(2).

[4] "Any aggrieved person in any trial, hearing, or proceeding in or before any court, . . . of the United States or the District of Columbia, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that the communication was unlawfully intercepted." D.C. Code § 23-551 (b)(1).

appellant's attempts to suggest otherwise and we can think of no legitimate policy justification for doing so.[5] *See also* D.C. Code § 23-553 (b) (2012 Repl.) (persons may testify in criminal cases about communications intercepted "in conformity with" subchapter of D.C. Code including D.C. Code § 23-542).

In addition, our holding is consistent with how the federal courts have addressed similar circumstances. Evidence that is obtained in violation of state law is nonetheless generally admissible in federal prosecutions so long as there has

---

[5] Appellant relies on *Mustafa v. State*, 591 A.2d 481 (Md. 1991), and the Maryland Code in support of his argument that the intercept was unlawfully obtained. However, *Mustafa* speaks to the admissibility of extraterritorially intercepted communications under Maryland law. *Id.* at 485 ("[E]vidence intercepted pursuant to more lenient statutory enactments of other jurisdictions must comply with Maryland's more restrictive standards before it may be lawfully disclosed in a Maryland court."). In that case, the contents of the interception were excluded not because Maryland purported to make the interception unlawful as a matter of Maryland law even though it occurred in D.C., but rather because the Maryland legislature had provided that only interceptions that met Maryland's requirements would be admissible as evidence in proceedings in Maryland. *Id.* While *Mustafa* does not control the admissibility of lawfully intercepted communications in the District of Columbia, the same reasoning applies here. District of Columbia law governing the admissibility of such evidence provides that interceptions that meet District of Columbia requirements are admissible as evidence in District proceedings. Here the recording met the District's requirements and therefore, the evidence was properly admitted in court. As the Maryland Court of Appeals recognized in *Mustafa*, "Maryland may not ordinarily proscribe conduct occurring outside its boundaries," but could "regulate the admissibility of evidence in its courts." *Id.* at 486. The same reasoning applies with equal force in the District of Columbia.

been compliance with all applicable federal requirements and the Fourth Amendment. *See United States v. Edmond*, 718 F. Supp. 988, 993 (D.D.C. 1989) (denying defendants' motion to suppress intercepted conversations that were obtained contrary to the laws of Maryland as the intercepts were lawfully made pursuant to federal law, and thus properly admissible in federal court); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 138 (1971) ("The local law of the forum determines the admissibility of evidence . . . ."). This general rule is grounded in two sound policy considerations: to allow otherwise (1) would permit a foreign state to frustrate the legislative policy of another state in the enforcement of its laws and (2) would create circumstances where a foreign court is having to decide the breadth of another state's laws, decisions that are best left to that state to make. *See generally United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir. 1987); *United States v. Shaffer*, 520 F.2d 1369, 1372 (3d Cir. 1975). We see no compelling justification for why the laws of Maryland should be permitted to frustrate the prosecution of crimes within the District of Columbia by excluding lawfully obtained evidence within the District.

Because the interception of appellant's phone conversation was lawfully obtained under D.C. Code § 23-542, the trial court did not err in denying appellant's motion to suppress.

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*