583 A.2d 1062

**Elizabeth TATUM, et al.**

**v.**

**Gregory GIGLIOTTI, et al.**

**No. 162, Sept. Term, 1989.**

Court of Appeals of Maryland.

Jan. 14, 1991.

David J. Perrone (Thomas Fortune Fay, Clower and Fay, P.C., all on brief), Washington, D.C., for petitioners.

Michael O. Connaughton, Deputy County Atty. (Michael P. Whalen, County Atty., J. Michael Dougherty, Jr., Associate County Atty., all on brief) Upper Marlboro, for respondents.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., and COLE,* Associate Judge of the Court of Appeals (retired).

COLE, Judge.

In this case we shall decide whether the Maryland Good Samaritan statute applies to a salaried Emergency Medical Technician (EMT) operating within the scope of his duties. The question presented arises on the grant of a motion for judgment. Therefore, we state the facts most favorable to the plaintiff.

Petitioner's son, Norman Tatum, Jr. (Tatum), had suffered from moderate to severe asthma since the age of three. At approximately 1:00 a.m. on September 21, 1981, Tatum experienced an asthma attack and called the Prince George's County Fire Department for assistance. He informed the dispatcher that he was having a severe asthma attack. Respondents, Gregory Gigliotti and Richard Miller, both EMTs for the Prince George's County Fire Department, responded to the call and attempted to treat Tatum.

They attempted to place a paper bag over his face as treatment for hyperventilation, although that act was in contravention of the prescribed treatment for an asthma attack. The EMTs assisted Tatum as he walked down the twelve flights of stairs to reach the ambulance, but they did not carry him on a stretcher, even though he was having great difficulty breathing. In the ambulance, Gigliotti attempted to place an oxygen mask over Tatum's face, but the latter struggled against that action and would not allow it. At some point, on the way to the hospital Tatum fell off the ambulance bench onto the floor of the vehicle. He was

---

* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, Sec. 3A, he also participated in the decision and the adoption of this opinion.

lying face down on the floor when the ambulance arrived at the hospital.

Gigliotti's ambulance report indicated that Tatum arrived at the hospital in stable condition, but that diagnosis was contradicted by the emergency room nurse who testified that Tatum had been in complete respiratory and cardiac arrest upon his arrival at the hospital. Efforts to revive him were unsuccessful. The doctor who performed the autopsy testified that severe oxygen deprivation was the cause of Tatum's death.

Petitioner, Tatum's mother, brought a wrongful death and survival action against Gigliotti, Miller, and Prince George's County. The actions against Miller and Prince George's County were dismissed before trial commenced. At the conclusion of the jury trial against Gigliotti, the jury, after deliberating for more than twelve hours, informed the judge that it was deadlocked. The court declared a mistrial. It also granted the Respondent's motion for judgment on the ground that the Good Samaritan statute applied to Gigliotti, thereby requiring proof that he was grossly negligent.[1]

In 1981, the year of Tatum's death, the Good Samaritan statute provided in pertinent part:

"§ 132. Liability for civil damages of physicians, nurses and certain other persons rendering aid under emergency conditions.

(a) A person licensed by the State of Maryland to provide medical care, who renders medical aid, care, or assistance for which he charges no fee or compensation: (1) at the scene of an emergency; (2) in transit to medical facilities; or (3) through communications with personnel rendering emergency assistance is not liable for any civil damages as the result of any professional act or omission by him not amounting to gross negligence.

---

1. Whether Petitioner's proof, related above, satisfies the statute's gross negligence standard is an issue that is not before us.

(b) A member of any State, county, municipal or volunteer fire department, ambulance and rescue squad, or the National Ski Patrol System, or law enforcement agency who has completed an American Red Cross course in advanced first aid or its equivalent and possesses a current card indicating that status as determined by the Secretary of Health and Mental Hygiene, or is certified by the State of Maryland as an emergency medical technician or cardiac rescue technician has the same immunity provided in subsection (a). A volunteer fire department or ambulance and rescue squad has the same immunity as its members.

(c) Members and employees of federal, State, county, or city governments, hospitals, emergency medical service councils and agencies which operate as nonprofit groups that provide support to the emergency medical system through the provision of care, equipment, facilities, or consultant support without charging the emergency victim a fee for the service provided are not liable for any civil damages resulting from acts or omissions not amounting to gross negligence."

Md.Code (1957, 1980 Repl.Vol.), Art. 43, § 132.[2]

Petitioner appealed to the Court of Special Appeals which affirmed. *Tatum v. Gigliotti,* 80 Md.App. 559, 565 A.2d 354 (1989). The intermediate appellate court held that the immunity provided by the statute applies to a salaried EMT, acting within assigned duties, who does not charge a fee directly to the victim. We granted Petitioner's request for the writ of certiorari.

Beyond recognizing that § 132 does not impose upon anyone an affirmative duty to render assistance to one in need, *Pope v. State,* 284 Md. 309, 325, 396 A.2d 1054, 1064 (1979), this Court has not had an opportunity to interpret the Good Samaritan statute. The Court of Special Appeals has, however, stated in dicta that volunteer firemen are

---

**2.** The statute, as subsequently recodified, is now Md.Code (1974, 1989 Repl.Vol.), § 5-309 of the Courts and Judicial Proceedings Article.

immune from ordinary civil liability for any act or omission in rendering emergency medical assistance. *Utica Mut. Ins. Co. v. Gaithersburg–Washington Grove Fire Dep't,* 53 Md.App. 589, 595 n. 5, 455 A.2d 987, 991 n. 5, *cert. denied,* 296 Md. 224 (1983). The Attorney General also addressed the issue and stated:

> "The whole statutory scheme reflects the principle that, if the victim is charged for the help by the person seeking immunity, then no immunity is available under the Good Samaritan Law; but, if the victim is not charged by the one rendering the assistance and seeking immunity, then even a salaried employee is entitled to immunity absent gross negligence."

64 Op. Att'y Gen. 175, 177 (1979) (footnote omitted).

■ We first note that as a general principle of statutory construction the words of a statute are to be given their ordinary signification absent a manifest contrary intent on the part of the legislature. Results inconsistent with common sense are to be avoided. *See Kaczorowski v. City of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987). *See also Harford County v. University of Maryland Medical Sys.,* 318 Md. 525, 529, 569 A.2d 649, 651 (1990); *Potter v. Bethesda Fire Dep't, Inc.,* 309 Md. 347, 524 A.2d 61 (1987). Moreover, we have recognized that statutes are to be " 'construed reasonably, with reference to the purpose to be accomplished....' " *Potter,* 309 Md. at 353, 524 A.2d at 64 (quoting *State v. Fabritz,* 276 Md. 416, 421, 348 A.2d 275, 278 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976)).

Petitioner's argument rests primarily on subsection (a) of § 132. She contends that, because Gigliotti was paid a salary by Prince George's County, he was not a person who rendered assistance without charging "compensation." Petitioner further argues that Good Samaritan statutes do not apply to one who is under a pre-existing duty to render medical assistance. In the latter respect Petitioner relies upon a line of cases led by *Lee v. State,* 490 P.2d 1206 (Alaska 1971), which reasoned that the purpose of a Good

Samaritan statute is to "induce voluntary rescue by removing the fear of potential liability which acts as an impediment to such rescue." *Id.* at 1209. And *see Colby v. Schwartz,* 78 Cal.App.3d 885, 144 Cal.Rptr. 624 (1978); *Henry v. Barfield,* 186 Ga.App. 423, 367 S.E.2d 289 (1988); *Clayton v. Kelly,* 183 Ga.App. 45, 357 S.E.2d 865 (1987); *Tiedeman v. Morgan,* 435 N.W.2d 86 (Minn.App.1989); *Lindsey v. Miami Dev. Corp.,* 689 S.W.2d 856 (Tenn.1985).

 We, however, find those cases to be inapposite. We are unpersuaded by the out-of-state authority because we cannot overlook the clear language of our § 132(b) which distinguishes the Maryland statute from the statutes interpreted in the cases previously cited. Subsection (b) expressly applies to "member[s] of ... county ... ambulance and rescue squad[s] ... certified ... as [ ] emergency medical technician[s]" who render medical care at the scene of an emergency or in transit to medical facilities. Respondent clearly falls within this description. The General Assembly certainly knew that "[a] member of [a] county ... ambulance or rescue squad" has a pre-existing duty to provide medical care and, typically, is salaried. Accordingly, rather than exclude from coverage those EMTs, the statute clearly extends immunity to them.

The legislative history reinforces this conclusion. Maryland's Good Samaritan statute was first enacted by Ch. 65 of the Acts of 1963. Originally limiting coverage to physicians licensed to practice medicine, the statute provided doctors protection against civil liability for acts or omissions not amounting to gross negligence and for which the physician received no fee or compensation from the patient for rendering the aid. In 1964 the law was amended by Ch. 48 to include trained "members of volunteer ambulance and rescue squads." The next year a third section was added providing the same immunity to registered nurses and licensed practical nurses. *See* 1965 Md.Laws, Ch. 475. By Ch. 616 of the Acts of 1969, the legislature again amended the statute and extended coverage to include trained "members or employees of fire departments." More important,

the legislature deleted the word "volunteer" that had preceded "ambulance and rescue squads" in the 1964 version of the statute. Between 1970 and 1976 other provisions were added to the statute. In 1976 the legislature repealed and reenacted the law, consolidating its provisions into four subsections, the first three of which have been reproduced above. See 1976 Md.Laws, ch. 689. Thus, the immunity is granted to, *inter alia*, members of fire departments and ambulance and rescue squads which may be state, county or municipal, as well as volunteer.

We hold that the gross negligence standard of the Good Samaritan statute was the proper standard to be applied by the courts below.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.