**SURVIVAL & WRONGFUL DEATH ACTION — SUMMARY JUDGMENT — GROSS NEGLIGENCE — SUFFICIENT EVIDENCE**

Pursuant to Maryland Rule 2-501(f), a "court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party … is entitled to judgment as a matter of law." Recognizing that a claim for gross negligence "sets the evidentiary hurdle at a higher elevation[]" than a claim for negligence, the Court explained that in order to claim that a party has acted with gross negligence, it must be pled that the party acted with wanton and reckless disregard for the rights of others. *Beall v. Holloway-Johnson*, 446 Md. 48, 64 (2016). It is more than the failure to perform a duty, but "an intentional failure to perform a manifest duty in reckless disregard of the consequences …." *Barbre v. Pope*, 402 Md. 157, 187 (2007).

**GOOD SAMARITAN ACT — FIRE & RESCUE COMPANIES ACT — IMMUNITY — WILLFUL OR GROSSLY NEGLIGENT CONDUCT**

Pursuant to Maryland Code, Courts & Judicial Proceedings Article, § 5-603 ("Good Samaritan Act") and § 5-604 ("Fire & Rescue Companies Act"), in the absence of willful or grossly negligent conduct, emergency responders covered under the Good Samaritan Act and/or the Fire & Rescue Companies Act are immune from civil liability for any acts or omissions in providing assistance or in the performance of their duties.

The Court concluded that there was insufficient evidence support Paramedic Nappi and EMT Jackson's pre-arrival and post-arrival conduct as being willful or grossly negligent. And, because they were employees of the Baltimore County Fire Department, the Court determined that both Paramedic Nappi and EMT Jackson were entitled to immunity for the claims against them under the Good Samaritan Act and the Fire & Rescue Companies Act.

**NEGLIGENCE — CONDUCT OF EMPLOYEES — DIRECT CLAIMS AGAINST COUNTIES**

The Local Government Tort Claims Act (LGTCA) of the Courts & Judicial Proceedings Article, §§ 5-301, *et seq*., governs claims and lawsuits against local governments. Appellants asserted direct claims against Baltimore County for the conduct of its employees and for its failure to have policies in place, requiring the emergency responders to notify dispatch of any delay in responding.

The Court found that there was insufficient evidence that there was a delayed response by Paramedic Nappi and EMT Jackson or that the existence of a delayed-response policy would have resulted in a different outcome. It concluded that there was no legal or factual basis for a direct claim of liability against Baltimore County for its failure to have

a delayed-response policy in place.  As a result, it was entitled to governmental immunity under the LGTCA.

Circuit Court for Baltimore County
Case No. 03-C-18-001391

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 318

September Term, 2019
_____


OCTAVIA T. COIT, ET AL.

v.

NICOLE NAPPI, ET AL.

_____

Nazarian,
Arthur,
Sharer, J. Frederick
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Sharer, J.
_____

Filed: October 1, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Ceontay Coit died on December 11, 2015, at the age of 21 as a result of cardiac arrest following an acute asthma attack. Appellants, Octavia T. Coit and Jan Michael Pinkney, his parents, and the Estate of Ceontay Coit, filed suit in the Circuit Court for Baltimore County asserting wrongful death and related claims. Appellees, defendants below, are Nicole Nappi and Traci Jackson, and their employer, Baltimore County. Ms. Nappi was a paramedic at the time and Ms. Jackson was an emergency medical technician (EMT) at the time who responded to a 911 call to attend to Mr. Coit and transported him to a hospital, where he died. It is the timing and propriety of their response that led to this litigation.

After the completion of discovery, appellees moved for summary judgment, which was heard by Hon. Dennis M. Robinson, Jr. on March 15, 2019. By order of March 26, 2019, the court granted the motion and entered judgment for all appellees.

In their appeal, appellants ask this Court to consider:

1. Whether the trial court erred, as a matter of law, in granting [appellees'] motion for summary judgment where [there] existed genuine issues of [material] facts between the parties[.]

2. Whether the trial court erred in holding, as a matter of law, that [appellants] required expert testimony to establish the proximate cause of death of Ceontay Coit despite the record demonstrating a fact witness unambiguously revealed [that] the deceased was still alive at the time [appellees] Jackson and Nappi abandoned him.

We review a trial court's grant of summary judgment for legal error, *i.e.*, was the court correct in its legal determination that there existed no genuine dispute of material fact and that the prevailing party was entitled to judgment as a matter of law. *See Powell v. Breslin*, 195 Md. App. 340, 345–46 (2010); *ABC Imaging of Wash., Inc. v. Travelers*

*Indem. Co. of Am.*, 150 Md. App. 390, 394 (2003) (quoting *Tyma v. Montgomery County*, 369 Md. 497, 503–04 (2002)). In our review of a trial court's grant of summary judgment, we examine "'the same information from the record and determine the same issues of law as the trial court.'" *Cent. Truck Ctr., Inc. v. Cent. GMC, Inc.*, 194 Md. App. 375, 387 (2010) (quoting *La Belle Epoque, LLC v. Old Europe Antique Manor*, 406 Md. 194, 209 (2008)). In so doing, "[w]e look only to the evidence submitted in opposition to, and in support of, the motion for summary judgment in reviewing the trial court's decision to grant the motion." *Id*.

Having reviewed the record developed in the circuit court, including discovery, as did the motions court, we are satisfied that it committed neither error nor abuse of discretion in the order granting summary judgment. The court's extensive and thorough Decision and Order clearly, and in detail, considered the relevant facts. Its application of the law to those facts is clearly and carefully stated and, in our view, could not be improved upon by a writing of this Court. Hence, we adopt the motions court's findings and rulings as the opinion of this Court. We transpose into, with minor non-substantive edits, alterations where necessary, and incorporate into this opinion, the Decision and Order of the Circuit Court for Baltimore County, entered on March 26, 2019, as the opinion of this Court.[1]

The circuit court wrote:

---

[1] Because we affirm the court's grant of summary judgment, we need not consider appellants' second issue, even though it was likewise fully considered by the trial court.

2

## DECISION & ORDER – [APPELLEES'] MOTION FOR SUMMARY JUDGMENT

This case arises out of the untimely death of Ceontay Coit. He died on December 11, 2015 when he was twenty-one years old, after having difficulty breathing while at his friend's house. [Appellants] Octavia Coit, Jan Michael Pinkney and the Estate of Ceontay Coit filed a lawsuit against the Paramedic and Emergency Medical Technician who responded to a 911 call for service for Mr. Coit and against Baltimore County. Octavia Coit is Mr. Coit's mother. Mr. Pinkney is Mr. Coit's father. Paramedic Nicole Nappi and EMT Traci Jackson are the emergency medical service providers who responded first to the 911 call for Mr. Coit's medical emergency. Bruce Watkins is Mr. Coit's friend who was with him when he started experiencing the symptoms that prompted the 911 call. Mr. Watkins and Mr. Coit were at Mr. Watkins' home.

[Appellants] asserted three claims: 1) a survival action based on alleged gross negligence (Claim I - Count I), 2) a claim for funeral expenses (Claim I - Count II) and 3) a wrongful death claim based on several theories of recovery (Claim II - Count I). Discovery is complete. Paramedic Nappi, EMT Jackson and Baltimore County filed a motion for summary judgment. Ms. Coit, Mr. Pinkney and the Estate of Mr. Coit filed an opposition. The Court held a hearing regarding the motion for summary judgment on March 15, 2019. For the reasons stated below, the Court is granting [appellees'] motion for summary judgment and entering judgment in favor of Paramedic Nappi, EMT Jackson and Baltimore County.

### *SUMMARY JUDGMENT STANDARD*

Motions for summary judgment are governed by Maryland Rule 2-501, which provides that "[a]ny party may file a written motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." The standard for a motion for summary judgment is a familiar one:

> A summary judgment motion is not a substitute for trial. Rather it is used to dispose of cases when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. The standard for appellate review of a trial court's grant of summary judgment is whether the trial judge was legally correct in his or her rulings. In granting a motion for summary judgment, the trial

3

judge may not resolve factual disputes, but instead is limited to ruling on matters of law. Summary judgment is generally inappropriate when matters such as knowledge, intent, and motive are at issue. If any inferences may be drawn from the well-plead facts, the trial court must construe those inferences in the light most favorable to the non-moving party. The existence of a dispute as to some non-material fact will not defeat an otherwise properly supported motion for summary judgment, but if there is evidence upon which the jury could reasonably find for the non-moving party or material facts in dispute, the grant of summary judgment is improper.

*Okwa v. Harper,* 360 Md. 161, 178 (2000) (internal citations omitted). Although a court must resolve all inferences in favor of the party opposing summary judgment, those inferences must be reasonable. *Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 739 (1993).

### *SUMMARY OF THE PARTIES' RESPECTIVE POSITIONS*

Paramedic Nappi and EMT Jackson argue that they are entitled to immunity pursuant to Md. Code Ann., Cts. & Jud. Proc. § 5-603 ("Good Samaritan Act") and Md. Code Ann., Cts. & Jud. Proc. § 5-604 ("Fire & Rescue Companies Act"). Baltimore County argues that it is entitled to governmental immunity under Md. Code Ann., Cts. & Jud. Proc. §§ 5-301, *et seq.* ("LGTCA"). [Appellees] also argue that they are entitled to summary judgment because Mr. Coit was contributorily negligent and because there is insufficient evidence to support a negligence claim against Paramedic Nappi and EMT Jackson.

[Appellants] argue that there is sufficient evidence of gross negligence on the part of Paramedic Nappi and EMT Jackson to preclude them from receiving the immunity provided by the Good Samaritan Act and the Fire & Rescue Companies Act. They argue that Baltimore County is not entitled to governmental immunity under the LGTCA because the claims are based on the County's policies and customs. [Appellants] also argue that the evidence does not support a finding of contributory negligence on the part of Mr. Coit, and that there is sufficient evidence to support the claims against [appellees]. According to [appellants], there are several factual disputes that preclude entry of summary judgment in favor of [appellees]:

1) the parties' respective interpretations on [appellees] Jackson and Nappi's response time; 2) the effect of

4

abandoning Mr. Coit and rendering no useful aid upon arrival; 3) whether [appellees] followed response protocol when there is an actual delay to their response time and refusing to update dispatch on said delay while having full knowledge that all communications to dispatch are relayed to the patient for the patient's health and safety; 4) whether injecting Coit with Narcan with no evidence of Opioid use, then lying on his medical records to cover up their further malfeasance, in stating that, "patient was found with a rubber band around arm" to justify use of Narcan which they themselves purport has no helpful effects on persons not suffering from Opioid overdose such as Mr. Coit; 5) whether [appellees] actually began any "treatment" for Mr. Coit after their uneventful arrival at Mr. Watkins' home; 6) whether [appellees] provided any assessment for Mr. Coit, at all, in a time frame that would actually serve to benefit Mr. Coit; 7) whether the use of [the] CAD report to document response and event time throughout this emergency given [appellees] Nappi and Jackson admit to providing misinformation to dispatch on the critical question of when they were "in route" and driving to Mr. Coit; 8) who upgraded the call and requested a "medical box" respond to Mr. Coit, dispatch or [appellees] Nappi and Jackson; and 9) the wrongful assertion that Mr. Coit had done something wrong to cause or contribute to his own death.

Pls.' Opp[.] at 12-13.


## DISCUSSION

### STATUTORY IMMUNITY FOR PARAMEDIC NAPPI AND EMT JACKSON

There are two statutes that may provide a basis for immunity for Paramedic Nappi and EMT Jackson: 1) the Good Samaritan Act, and 2) the Fire & Rescue Companies Act. Section 5-603(a) of the Good Samaritan Act provides that a person entitled to immunity under the statute

is not civilly liable for any act or omission in giving any assistance or medical care, if: (1) The act or omission is not one of gross negligence; (2) The assistance or medical care is provided without fee or other compensation; and (3) The assistance or medical care is provided: (i) At the scene of an

5

emergency; (ii) In transit to a medical facility; or (iii) Through communications with personnel providing emergency assistance.

Section 5-603(b) of the Good Samaritan Act provides that the immunity provided in subsection (a) of the statute applies to several categories of people, including "[a] member of any State, county, municipal, or volunteer fire department, ambulance and rescue squad, or law enforcement agency, the National Ski Patrol System, or a corporate fire department responding to a call outside of its corporate premises, if the member [satisfies other conditions.]" Section 5-604[(a)] of the Fire & Rescue Companies Act provides: "Notwithstanding any other provision of law, except for any willful or grossly negligent act, a fire company or rescue company, and the personnel of a fire company or rescue company, are immune from civil liability for any act or omission in the course of performing their duties." There is no dispute that Paramedic Nappi and EMT Jackson were providing emergency medical services in their official capacities and are otherwise entitled to the immunity protections under the Good Samaritan Act and the Fire & Rescue Companies Act, provided that their conduct with respect to Mr. Coit was not willful or grossly negligent.

In *Barbre v. Pope*, 402 Md. 157, 187 (2007), the Court of Appeals noted the distinction between simple negligence and gross negligence. The Court explained:

> [G]ross negligence is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.

The Court of Appeals recently explained that a claim for gross negligence "sets the evidentiary hurdle at a higher elevation[.]" *Beall v. Holloway-Johnson*, 446 Md. 48, 64 (2016). To claim that a party has acted with gross negligence, it must be pled that the party acted with wanton and reckless disregard for others. *Id*. (holding that a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when they inflict injury intentionally or is indifferent to the rights of others, that he acts as if such rights do not exist). The Court of Special Appeals has explained the difference between the terms "willful" and "wanton" as follows:

> Willful misconduct is performed with the actor's actual knowledge or with what the law deems the equivalent to

6

actual knowledge of the peril to be apprehended, coupled with a conscious failure to avert injury. By contrast, a wanton act is one performed with reckless indifference to its potential injurious consequences. The term "wanton" generally denotes "conduct that is extremely dangerous and outrageous, in reckless disregard for the rights of others."

*Wells v. Polland*, 120 Md. App. 699, 719 (1998) (citing *Doehring v. Wagner*, 80 Md. App. 237, 246 (1989)).

[Appellees] rely primarily on two cases involving emergency medical services providers and the issue of gross negligence: *Tatum v. [Gigliotti]*, 80 Md. App. 559 (1989), *aff'd*, 321 Md. 623 (1991) and *McCoy v. Hatmaker*, 135 Md. App. 693 (2000). These cases are instructive and help to calibrate this Court's assessment regarding whether Paramedic Nappi's and EMT Jackson's conduct was willful or grossly negligent.

In *Tatum v. Gigliotti*, 321 Md. 623 (1991), a representative of a patient who died during an asthma attack filed a wrongful death and survival action against EMTs and Prince George's County. Mr. Tatum had called 911 and informed the dispatcher that he was having a severe asthma attack. Medics responded to the call and attempted to treat him for hyperventilation by placing a paper bag over his face, "although that act was in contravention of the prescribed treatment for an asthma attack." *Id.* at 625. Mr. Tatum was aided walking down twelve flights of stairs but was not carried on a stretcher. *Id.* Along the way to the hospital, a paramedic attempted to place an oxygen mask over Mr. Tatum's face, but he resisted. *Id.* At some point during the ride, Mr. Tatum fell out of the seat and was lying face down on the floor. *Id.* 625-26. Upon arrival at the hospital, the ambulance report prepared by one of the EMTs indicated that Mr. Tatum arrived at the hospital in stable condition. *Id.* at 626. The emergency room nurse testified otherwise, stating that Mr. Tatum was in complete respiratory and cardiac arrest when he arrived. *Id.* The hospital staff was unable to revive Mr. Tatum and he died due to oxygen deprivation. *Id.* In *Tatum*, the Court of Special Appeals rejected the argument that the EMTs' failure to administer oxygen and falsification of the ambulance report rose to gross negligence, reasoning that "[t]he evidence...indicated that although the [EMTs'] actions […] may have amounted to negligence, they do not satisfy the threshold of gross negligence." *Tatum*, 80 Md. App. at 569 (1989).[2]

---

[2] The Court of Appeals granted a writ of certiorari in *Tatum* to address whether the immunity provided by the Good Samaritan Act applied to a

In *McCoy v. Hatmaker*, 135 Md. App. 693 (2000), Mr. McCoy collapsed while driving himself and a co-worker to work. [*Id*. at 699.] After the car came to a stop, Mr. McCoy was unresponsive and making a gargling noise. [*Id*. at 700]. His co-worker flagged down a passing police officer who stopped and took Mr. McCoy's pulse. [*Id*.] The officer conveyed to the co-worker that McCoy had a weak pulse. [*Id*.] When an ambulance arrived, the officer advised EMTs that Mr. McCoy was in full cardiac arrest. [*Id*. at 701.] The EMT ran to the vehicle and took no resuscitation efforts due to his observation that Mr. McCoy had no pulse, dilated and fixed pupils, expelled bodily fluids, and a decreased body temperature. [*Id*.] In that case, McCoy's estate alleged that the EMT was grossly negligent in failing to render appropriate aid to the decedent and that the EMT failed to follow emergency medical protocols related to the treatment of deceased patients. [*Id*. at 701-02.] The Court of Special Appeals concluded that the decisions made under emergency circumstances did not amount to a deliberate choice not to render medical care to a patient and found the EMT was not grossly negligent. [*Id*. at 713-14.] In *McCoy*, the Court of Special Appeals also characterized the circumstances of *Tatum* as "highly egregious facts showing misdiagnosis of a patient, treatment bordering [upon] cruelty, and falsification of records" and explained that the Court "nevertheless upheld the trial court's grant of summary judgment in favor of [the EMT] in *Tatum*." *Id*. at 707.

According to [appellants], there are two distinct time periods during which Paramedic Nappi's and EMT Jackson's conduct was willful or grossly negligent. First, [appellants] claim that their delayed response time, alleged incorrect information to dispatch before their arrival and perceived lack of urgency upon arrival constitute willful conduct or gross negligence (pre-arrival conduct). Second, [appellants] claim that Paramedic Nappi and EMT Jackson engaged in willful conduct or were grossly negligent in their assessment and treatment of Mr. Coit on the scene (post-arrival conduct). Given that there are separate and distinct factual allegations related to the

---

salaried emergency medical technician and whether the Court of Special Appeals and trial court correctly applied the gross negligence standard to analyze the conduct at issue with respect [to] the issue of immunity. The Court of Appeals held "that the gross negligence standard of the Good Samaritan statute was the proper standard to be applied by the courts below." *Tatum*, 321 Md. at 630. This Court also cited the Court of Special Appeals['] decision because it analyzed the issue of whether the conduct at issue was grossly negligent, which is a central issue in this case.

8

pre-arrival conduct and the post-arrival conduct, the Court will address them separately.

There is insufficient evidence to support [appellants'] claim that Paramedic Nappi's and EMT Jackson's pre-arrival conduct was willful or grossly negligent. The [appellants] do not dispute that the call for service to M19, the unit Paramedic Nappi and EMT Jackson were operating, was dispatched at 5:08:46 a.m. on December 11, 2015, as reflected in a computer-aided dispatch (CAD) report that is part of the evidentiary record. [Appellants] dispute that Paramedic Nappi and EMT Jackson were "en route" as of 5:11:12 a.m., as reflected in the CAD report. That dispute is based on an attempt to parlay Paramedic Nappi's and EMT Jackson's inability to recall details at a deposition on October [23, 2018], nearly three years after the date of the call for service related to Mr. Coit, into allegations that they falsely reported when they were en route. Regardless of whether the dispute regarding the dispatch time is genuine, it is not disputed that Paramedic Nappi and EMT Jackson arrived on the scene at 5:15:30 a.m., which was 6 minutes and 44 seconds after the call was dispatched. Paramedic Nappi and EMT Jackson's arrival time is further corroborated by the CAD report and other evidence reflecting their arrival time. There is undisputed evidence in the CAD report that units, EMS5 and E19 arrived at the scene after Paramedic Nappi and EMT Jackson, at 5:16:57 a.m. and 5:22:24 a.m.[,] respectively. Based on the CAD report, EMS5 arrived 1 minute and 27 seconds after Paramedic Nappi and EMT Jackson, and E19 arrived 6 minutes and 54 seconds after Paramedic Nappi and EMT Jackson. Although [appellants] attempt to call into question the entire CAD report based on Paramedic Nappi's and [EMT] Jackson inabilities to recall details nearly three years after the incident and even go so far as to suggest that the report was falsified, there is no evidentiary basis for that. Although, in the context of a motion for summary judgment, non-moving parties are entitled to have the Court draw all reasonable inferences in their favor, non-moving parties are not entitled to all conceivable inferences. There are no genuine disputes regarding material facts related to the timing of Paramedic Nappi and EMT Jackson's arrival at Mr. Watkins' home.

[Appellants] also claim that Paramedic Nappi and EMT Jackson were "lackadaisical" when they arrived at Mr. Watkins' residence. [Appellants] characterize their conduct as "abandoning" Mr. Coit. There is no evidentiary basis for that. [Appellants] also attempt to highlight a snippet of Paramedic Nappi's deposition testimony, in which she stated, "We don't run."[] [Appellants'] reliance on that statement to attempt to generate evidence of willful conduct or gross negligence ignores the

context for that statement. Paramedic Nappi explained that not running to calls for service is a matter of safety for emergency medical service providers, and is intended to maximize their effectiveness as first responders. Essentially, emergency medical service providers are not able to render aid if they become injured or incapacitated while responding. The evidence in the record demonstrates that Paramedic Nappi and EMT Jackson arrived at the scene of an emergency in response to a call in the early morning hours less than 7 minutes after receiving the call from a dispatcher. There is no genuine dispute regarding that evidence. [Appellants'] reference at the hearing to a policy-based expectation of a 90-second "turn-out time" for emergency medical service providers does not provide a basis for gross negligence. Even if Paramedic Nappi and EMT Jackson were, in some way, negligent in their response to the call for service, which the Court is not suggesting, there is not sufficient evidence that their pre-arrival conduct was willful or grossly negligent.

There is also insufficient evidence that Paramedic Nappi's and EMT Jackson's post-arrival conduct was willful or grossly negligent. Although the Court recognizes that seconds may seem like minutes during an emergency, the evidence demonstrates that, upon entering the basement of Mr. Watkins' home, Paramedic Nappi and EMT Jackson promptly assessed and treated Mr. Coit. They checked for a pulse, observed agonal respirations, placed an oxygen mask on Mr. Coit, prepared an intravenous line and began administering fluids, began transcutaneous cardiac pacing to address Mr. Coit's heart rate, administered Narcan, and administered Atropine. Treatment and assessment of Mr. Coit's condition continued after Mr. Coit was removed from the house and taken to the medic unit for transport to Northwest Hospital. He was intubated with an endotracheal intubation tube. Further assessment resulted in noting the absence of mechanical capture with transcutaneous pacing and agonal electrical rate without a pulse. Emergency medical service providers began administering CPR and administered Epinephrine during transport to Northwest Hospital. Upon arrival at Northwest Hospital, Paramedic Nappi reported to emergency department personnel regarding what treatment had been provided and the status of Mr. Coit's condition.

[Appellants] contend that the administration of Narcan was unnecessary because there was no specific indication that Mr. Coit was experiencing an opioid overdose. The Court understands and appreciates Mr. Coit's family's concern over a misperception that he was using drugs. The evidence demonstrates, however, that, regardless of how unnecessary the administration of Narcan may have been, there are no applicable contraindications for someone who did not overdose on opioids, and that

10

Narcan does not otherwise harm someone to whom it is administered. Even if Paramedic Nappi and EMT Jackson were, in some way, negligent in their assessment and treatment of Mr. Coit, which the Court is not suggesting, there is not sufficient evidence of gross negligence regarding their post-arrival conduct.

If the conduct in *McCoy* and *Tatum* was not willful or grossly negligent, then neither was the conduct in this case. The lack of evidence that Paramedic Nappi's and EMT Jackson's conduct was willful or grossly negligent entitles them to statutory immunity based on the Good Samaritan Act and the Fire & Rescue Companies Act and to judgment as a matter of law. There is not sufficient evidence in the record to conclude as a matter of law that Mr. Coit was contributorily negligent, so the Court is not granting summary judgment on that basis.

### *LACK OF CAUSAL CONNECTION BETWEEN ANY WRONGFUL CONDUCT AND INJURY*

Even if there was sufficient evidence of gross negligence or willful conduct by Paramedic Nappi or EMT Jackson, [appellants] must establish causation. For wrongful conduct to be a proximate cause of an injury, it must be a cause in fact of the injury, *i.e.*, there must be proof that, but for the wrongful conduct, the injury would not have occurred. *See Baltimore Gas and Elec. Co. v. Lane*, 338 Md. 34, 51 (1995). Although this is not a medical malpractice case, it is analogous to one. To prove causation in a medical malpractice case, a plaintiff "must establish that but for the negligence of the defendant, the injury would not have occurred." *Jacobs v. Flynn*, 131 Md. App. 342, 354 (2000). ["]Because of the complex nature of medical malpractice cases, expert testimony is normally required to establish breach of [the] standard of care and causation[,"] and the expert opinion must be established ["]within a reasonable degree of probability.["] *Id*. [Appellants] have not established causation. The issue of causation in this case can be framed as whether Mr. Coit would still be alive today if Paramedic Nappi's and EMT Jackson's pre-arrival or post-arrival conduct was different.

[Appellees] supported their motion for summary judgment with an affidavit of Dr. David Vitberg, a board-certified emergency medicine specialist. According to Dr. Vitberg, Paramedic Nappi and EMT Jackson followed all applicable protocols established by the Maryland Institute for Emergency Medical Services Systems (MIEMSS) and otherwise satisfied the standard of care with respect to Mr. Coit. [Appellants], on the other hand, have not provided any expert medical testimony in support of their

11

claims. Expert medical testimony is necessary to establish gross negligence by Paramedic Nappi and EMT Jackson. *See McCoy*, 135 Md. App at 720-22; *Tatum*, 80 Md. App at [569-71]. There is not sufficient evidence of causation. At the hearing, [appellants'] counsel suggested that Mr. Watkins may provide the testimony from which a jury could conclude that Mr. Coit would have survived if Paramedic Nappi and EMT Jackson arrived at the house sooner and assessed and treated Mr. Coit more aggressively. Any testimony along those lines by Mr. Watkins would not be admissible under Maryland Rule 5-702 because, although it may be relevant to the case, there is no evidence that Mr. Watkins "is qualified as an expert by knowledge, skill, experience, training, or education" to offer an expert opinion regarding causation. Even if there was sufficient evidence of willful conduct or gross negligence, the Court would grant summary judgment based on the lack of causation evidence.

### *GOVERNMENTAL IMMUNITY FOR BALTIMORE COUNTY*

The LGTCA governs claims and lawsuits against local governments. The LGTCA makes "local governments," including charter counties like Baltimore County, responsible for the defense and indemnity of governmental employees relating to lawsuits against employees for tortious conduct committed in the scope of their employment with the local government. [*Housing Authority of Baltimore City v. Bennett*, 359 Md. 356, 362 (2000) (citing Courts and Judicial Proceedings Article §§ 5-301(d) and 5-302(a))]. The purpose of the LGTCA is to provide a remedy for those injured by local government employees, while ensuring that the financial burden of compensation is on the local government, not its employees, unless an employee acted with malice. *Ashton v. Brown*, 339 Md. 70[, 107-08] (1995). The Court of Special Appeals has explained the legislative history of the LGTCA:

> The statute requires the government to assume financial responsibility for a judgment against its employee by abolishing that immunity the government may have had against responsibility for the act of its employees. The Act, however, does not *create* liability on the part of the government as a party to the suit.

*Khawaja v.* [*Mayor & City Council, City of Rockville*], 89 Md. App. 314, 325-26 (1991) (emphasis original).

… Section 5-303(b) of the LGTCA provides that immunity is waived for certain lawsuits against employees of a local government, but

not as to the local government itself, and that a local government must defend and indemnify its employees:

> (b)(1) Except as provided in subsection (c) of this section, a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government.
>
> (2) A local government may not assert governmental or sovereign immunity to avoid the duty to defend or indemnify an employee established in this subsection.

Local governments, unlike state governments, are "persons" under 42 U.S.C. § 1983 and can be sued for money damages under § 1983 when governmental law, policy or custom contributed to the violation of federal constitutional or statutory rights. *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 690-95 (1978). *See, e.g., City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Pembaur v. City of Cincinnati*, [475 U.S. 469] (1986); *De Bleecker v. Montgomery County*, 292 Md. 498, 511-12 (1982). [Appellants] are asserting a direct claim against Baltimore County based on their position that Mr. Coit's constitutional rights "were violated as a direct result of Baltimore County policies and customs which contributed to the deprivation of Mr. Coit's federal constitutional or statutory rights to life." Pls.' Opp. at 19. According to [appellants], it is the lack of a policy that provides a basis for a direct claim against Baltimore County, specifically a "delayed-response" policy that would require emergency medical service providers (and presumably other first responders) to notify a dispatcher if there will be a delay in responding to an emergency. Baltimore County argues that it is entitled to governmental immunity under the LGTCA.

According to [appellants], a "delayed-response" policy would require emergency medical service providers, like Paramedic Nappi and EMT Jackson, to notify a dispatcher that their response time was delayed and require the dispatcher to relay that information to someone seeking emergency assistance, so that someone seeking emergency assistance can make decisions regarding their course of action based on that information.

There is no legal or factual basis for a direct claim against Baltimore County. As discussed above, there is not sufficient evidence of a delayed response time by Paramedic Nappi and EMT Jackson. There is also not sufficient evidence that having a delayed-response policy would have resulted in a better outcome for Mr. Coit. If there was a delay in response

13

time and the dispatcher had communicated that delay to Mr. Watkins, he and Mr. Coit would have faced the choice of waiting a few minutes, at most, for trained emergency medical service providers to arrive or having Mr. Watkins drive Mr. Coit to Northwest Hospital, which was several miles away, without the prospect of any medical treatment on the way to the hospital. There is not sufficient evidence to support the theory that Mr. Coit would have experienced a better outcome if Baltimore County had a delayed-response policy as [appellants] suggest and if it was followed. There is insufficient evidence for any basis to impose direct liability on Baltimore County. Baltimore County is entitled to summary judgment.

## *CONCLUSION*

Everyone, of course, wishes that there was a different outcome that resulted in Mr. Coit being alive today. It is tragic and unfortunate that he is not. This Court is required to evaluate the evidentiary record within the framework of the applicable law to determine if there is sufficient evidence to support [appellants'] claims. Based on the undisputed facts in the evidentiary record, Paramedic Nappi, EMT Jackson and Baltimore County are entitled to judgment as a matter of law. Paramedic Nappi and EMT Jackson are entitled to statutory immunity based on the Good Samaritan Act and the Fire & Rescue Companies Act because their conduct was neither willful nor grossly negligent. Baltimore County is entitled to governmental immunity under the [LGTCA] because there is no basis for any direct claims against it. Even if the parties were not entitled to immunity, there is insufficient evidence to satisfy the causation requirement.

(Cleaned up).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS ASSESSED TO APPELLANTS.**

14